UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMMIE L. HAYNES,

                Petitioner,                **REPORT AND RECOMMENDATION**
      -vs-                                     **No. 06-CV-6188(DGL)(VEB)**

ACTING SUPERINTENDENT BRAT,

                Respondent.
_____

**I.     Introduction**

Petitioner, Timmie L. Haynes ("Haynes"), has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction on May 23, 2005, in Orleans County Court on charges related to his operation of his vehicle while intoxicated. United States District Judge David G. Larimer has referred this matter to the undersigned pursuant to 28 U.S.C. § 636(b) for the issuance of a report and recommendation regarding the disposition of Haynes' petition. For the reasons set forth below, I recommend that the petition be dismissed and that a certificate of appealability be denied as to all of Haynes' claims.

**II.    Factual Background and Procedural History**

Following a one-day jury trial in New York State County Court (Orleans County) (Punch, J.), Haynes was convicted two counts of operating a motor vehicle while under the influence of alcohol (New York Vehicle & Traffic Law ("V.T.L.") § 1192(2), (3)) and one count of first degree aggravated unlicensed operation of a motor vehicle (V.T.L. § 511(3)).  Prior to sentencing, Haynes, through his attorney, filed a motion to set aside the verdict pursuant to New

York Criminal Procedure Law ("C.P.L.") § 330.30, asserting that the police lacked probable cause to stop Haynes' vehicle and that the police intimidated a defense witness into making statements allegedly contrary to the interests of the defendant. *See* Respondent's Exhibit ("Resp't Ex.") A, attached to Respondent's Declaration in Opposition to Petition (Dkt. #8-2). The Orleans County District Attorney's office filed papers in opposition, *see* Resp't Ex. B, and the trial court denied the motion at the start of the sentencing hearing, *see* Resp't Ex. C. *See also* Resp't Mem. at 2 (Docket #8-1). Judge Punch sentenced Haynes to concurrent terms of one and one-third to four years imprisonment on each conviction. *See* Resp't Mem. at 2 (Dkt. #8-1). It does not appear that the denial of the C.P.L. § 330.30 motion was appealed.

On May 24, 2005, Haynes, through his attorney, then filed a notice of appeal in the Appellate Division, Fourth Department, of New York State Supreme Court, with regard to the judgment of conviction entered May 23, 2005. Thereafter, Haynes sought and received several extensions of time to perfect his appeal, the most recent of which was June 7, 2006 (Resp't Ex. E).[1]

In the meantime, on June 29, 2005, Haynes filed a *pro se* motion to set aside his sentence pursuant to C.P.L. § 440.20, raising the same issues raised in support of his C.P.L. § 330.30 motion; this application was opposed by the District Attorney's office. *See* Resp't Ex. K-O. The trial court denied the motion on September 14, 2005, holding that the "sentence was authorized and legally imposed" and that Haynes "failed to offer any proof that the sentence is invalid as a matter of law." Resp't Ex. P at 3.

---

[1] At the time Haynes filed his habeas petition March 29, 2006, his direct appeal was still pending. The Appellate Division unanimously affirmed his conviction on December 22, 2006, and the New York Court of Appeals denied leave to appeal.

On October 17, 2005, Haynes filed a *pro se* motion in the Appellate Division to stay execution of the judgment against him and to obtain release on bail pending appeal, pursuant to C.P.L. § 460.50. *See* Resp't Ex. F. The Appellate Division (Martoche, J.) summarily denied the application on November 28, 2005. *See* Resp't Ex. G. Haynes twice moved for re-argument of this motion but was unsuccessful. *See* Resp't Ex H, I; *see also* Resp't Mem. at 2 (Docket #8-1).

Haynes then filed a *pro se* motion to vacate the judgment pursuant to C.P.L. § 440.10 on December 6, 2005, arguing that he submitted to the "breathalyzer" test under duress. *See* Resp't Ex. P. According to Haynes, his "sentence was procured under DURESS AND IMPROPER INFLUENCE an CRIMINAL COERCION, CREATED BY THE Officer. IN, the fact that during trial the officer stated on the record that he had COVA medical Services called to render medical assistance, which after there arriving, they were not allowed to help in any kind of way, unless the DWI rights and test were done, then he allowed them to act." Resp't Ex. P at 1 (emphasis in original). The District Attorney's office opposed the motion, *see* Resp't Ex. Q, arguing, *inter alia*, that it should be summarily dismissed since the issues raised therein were previously litigated and determined in connection with Haynes' earlier C.P.L. §§ 330.30 and 440.20 motions. The prosecutor also argued that dismissal was mandated under N.Y. Crim. Proc. Law § 440.10(2)© because there were sufficient facts on the record to permit review of the duress claim on appeal. The trial court issued its order denying the motion on March 3, 2006, holding that "[a] review of the transcripts . . . indicates that the issue raised by the defendant is part of the record and is appealable[,]" and therefore the court "must deny the motion pursuant to C.P.L. § 440.10(2)(b)." Resp't Ex. S at 2; *see also* Resp't Mem. at 3 (Dkt. #8-1).

At the time Haynes filed his petition for a writ of habeas corpus in 2006, his direct appeal

was still pending. On December 22, 2006, the Appellate Division, Fourth Department, unanimously affirmed Haynes' conviction.

In the form Petition (Dkt. #1), Haynes asserts that (1) the Appellate Division incorrectly denied his motion to be released on bail pending appeal; and (2) the results of the breathalyzer test should have been suppressed because the test was administered under duress. *See* Petition ("Pet.") at 5-6 (Dkt. #1). By letter to the Court dated May 2, 2006 (Dkt. #6), Haynes also appears to challenge the police officers' stop of his vehicle and the administration of a "preliminary breath test" under V.T.L. § 1194(1)(b). *See* Docket #6. Respondent argues that only petitioner's bail claim is exhausted and asserts that the Court should deny the bail claim on the merits and dismiss the remaining claims as unexhausted[2] without prejudice to re-file once they have been fully exhausted in state court. *See* Dkt. #8-1. At the time respondent made this argument regarding non-exhaustion, Haynes' direct appeal still was pending, and the claims relating to the administration of the preliminary breath test and the stop of the vehicle had not yet been exhausted. As noted above, however, the Appellate Division has since ruled on those claims, dismissing them as without merit. The New York Court of Appeals subsequently denied leave to appeal. Thus, it appears that Haynes has given the New York courts the opportunity to rule on the claims on which he seeks habeas relief in this Court, thereby fulfilling the exhaustion of state

---

[2]    A petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995). The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that a habeas petitioner must give the state courts a "full and fair opportunity" to review the merits of his federal claims "by invoking one complete round of the State's established appellate review process"); *see also Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991));. A claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim. *Grey*, 933 F.2d at 119-20.

remedies requirement.

### III.     Merits of the Petition

#### 1.     The Denial of Bail Claim

In his form Petition (Dkt. #1), Haynes asserts that the Appellate Division "(ARBITRARLY) [sic] <u>denied</u> the Motion" to be released on bail. Haynes states that there "was never a hearing on fixing bail, pending appeal[.]" Pet. at 5 (Dkt. #1) (emphasis in original). In his Petition, Haynes provides no further argument as to why the denial of bail was arbitrary. In Haynes' "Affidavit in Support of Motion for Recognizance or Bail, Pending Appeal" (Resp't Ex. F), submitted in state court, Haynes argued that he was entitled to be released on bail because his "Appeal, not only has "GREAT MERIT" and that there is a believeable [sic] and more than reasonable amount of possibility of a COMPLETE and ULTIMATE REVERSAL of the JUDGEMENT of the CONVICTION APPEALED from." *Id.* (emphasis in original). That appears to be the only ground asserted by Haynes entitling him to release on bail.

A prisoner has no federal constitutional right to be released on bail pending appeal of his conviction. Once, however, a state makes provisions for such bail, the Eighth and Fourteenth Amendments mandate that the state not deny bail arbitrarily. *Finetti v. Harris*, 609 F.2d 594, 599 (2d Cir. 1979); *Brown v. Wilmot*, 572 F.2d 404, 405 (2d Cir. 1978); *accord, e.g.*, *Danylocke v. Dalsheim*, 662 F. Supp. 961 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 1287 (2d Cir. 1988); *Pulaski v Hopkins*, 745 F. Supp. 882, 885 (E.D.N.Y. 1990). The Second Circuit has held that the "mere failure of the state court to articulate reasons for its denial of bail pending appeal does not create a 'presumption of arbitrariness.'" *Finetti*, 609 F.2d at 601 (citations omitted). Rather, on federal habeas, a state court's judgment carries a "presumption of regularity" which the defendant bears

the burden of overcoming by demonstrating that there is no rational basis in the record for the denial of bail. *Id.* (citations omitted); *accord Danylocke*, 662 F. Supp. at 963; *Pulaski*, 745 F. Supp. at 885. Although the Second Circuit has not articulated what constitutes a sufficient showing by a petitioner to initially rebut, and ultimately sustain, this burden, *Danylocke*, 662 F. Supp. at 964, clearly the petitioner bears the burden of showing that there was no rational basis in the record for Justice Martoche's decision, *id.*; *accord Jones v. O'Keefe*, 2000 WL 1290595 (S.D.N.Y. Sept. 12, 2000). Therefore, the Court need only be able to discern, on the record before it, a rational reason for the state court to have denied Haynes bail. *See Finetti*, 609 F.2d at 601-02; *accord Osinoiki v. Riley*, 1990 WL 152540, at *3 (E.D.N.Y. Sept. 28, 1990); *Jones v. O'Keefe*, 2000 WL 1290595, at *4.

Under C.P.L. § 510.30, which governs applications for recognizance or bail, the reviewing court was required to evaluate Haynes as a possible flight-risk and the likelihood that his conviction ultimately would be reversed on appeal. N.Y. Crim. Proc. Law § 510.30(2)(a), (b). A determination that a defendant's appeal is "palpably without merit alone justifies, but does not require, a denial of the application, regardless of any determination made with respect to" other factors specified in the statute, such as the defendant's character and mental condition, family ties, criminal record. N.Y. Crim. Proc. Law § 510.30(2)(b). At sentencing, Haynes' attorney introduced medical records at the sentencing hearing that Haynes had been found to be 100% disabled by the Veterans Administration in 1995 and that his vision was rapidly deteriorating; assuming that Haynes' health problems were as severe as alleged, it does not appear that he posed a significant flight risk. The trial judge observed however, that Haynes, the last time he

had been sentenced, had "fak[ed]" his health problems and submitted false documents. S.6.³

Furthermore, the trial judge noted that Haynes had a "terrible criminal history"–"[o]ne of the worst on D.W.I." that he had seen, and that Haynes had "no remorse, whatsoever." S.6. Even if Haynes may not have posed a substantial risk of non-appearance, the fact that he continued to commit the crime of driving while intoxicated and while–by his own admission–he was going blind certainly made him a potential public safety risk. Based on the these factors, the state court reviewing Haynes' bail application reasonably could have concluded that he should not be released on his own recognizance. Moreover, the court reviewing Haynes' bail application was required to consider the likelihood that he would be successful on appeal, and could take into account the fact that his motion to set aside the verdict and motion to set aside the sentence already had been denied. This Court, which has the benefit of knowing the outcome of Haynes' appeal–namely, that his conviction was unanimously upheld by the Appellate Division–cannot say that it was irrational for the state court to have concluded that Haynes' direct appeal lacked merit and therefore issuance of bail was unwarranted. Indeed, the Court sees no credible reason to disregard the state court's judgment now.

Haynes has failed to meet his burden of proving that the Appellate Division's decision denying him bail on appeal was not founded upon a rational basis. Accordingly, the Court recommends that habeas relief not issue on this claim.

    **2.**     **Claims Relating to the Stop of Petitioner's Vehicle and the Administration of the "Breathalyzer" and "Preliminary Breath Test"**

Haynes asserts in his Petition (Dkt. #1) that the "Breatalyzer [sic] test was procured with

---

³     Citations to "S.___" refer to the transcript of the sentencing hearing held on May 23, 2005.

Petitioner under Duress, an [sic] with the test (suppressed) no legal proof of intoxication, theirfor [sic] no indictment. Proof "(is)" [sic] on the record of this, attimtted [sic] to by the District Attorney & Judge Punch (Orleans County) . . . ." Pet. at 6 (Dkt. #1). In a letter to the Court (Docket No. 6), Haynes sought to add to his Petition what he described as "further violations of Constitutional rights; the Fourth and or [sic] the Fifth Amendments." In the letter, Haynes asserts that "there was ("no") improper operation of the vehicle prior to the stop" of Haynes' vehicle. *See* Dkt. #6. According to Haynes, in order for the police to administer a "PBT (Preliminary Breath Test)", Section 1194(1)(B) of the Vehicle and Traffic Law requires that the vehicle have been involved in an accident or "operated in violation of any of the provisions of this chapter." *Id.* (emphasis in original). Absent from the record, according to Haynes, is "any indication of a [sic] accident" or "that operation was in violation of any traffic violation[.]" *Id.* Therefore, Haynes argues, the police lacked probable cause to stop his vehicle and the Preliminary Breath Test was "in violation of Federal and New York State Constitutions[.]" *Id.*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "'An ordinary traffic stop constitutes a limited seizure within the meaning of [this] Amendment[.]'" *United States v. Harrell*, 268 F.3d 141, 148 (2d Cir. 2001) (quoting *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994) (citation and internal quotation marks omitted in original) and citing *Whren v. United States*, 517 U.S. 806, 809-10 (1996) (citations omitted in original). "'An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances.'" *Id.* (quoting *Whren*, 517 U.S. at 810). Generally speaking, a police officer's decision to stop an automobile is considered "reasonable" when the

officer has "probable cause to believe that a traffic violation has occurred." *Id.* (quoting *Whren*, 517 U.S. at 810).

The Supreme Court has held that "[s]ubjecting a person to a breathalyzer test, which generally requires the production of alveolar or 'deep lung' breath for chemical analysis, implicates similar concerns about bodily integrity and ... should also be deemed a search" within the meaning of the Fourth Amendment. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616-17 (1989). In a case involving the taking of a driver's blood for alcohol analysis, the Supreme Court held that such a test does not involve an "unreasonable search" under the Fourth Amendment when there is probable cause, exigent circumstances and a reasonable examination procedure. *See Schmerber v. California*, 384 U.S. at 768-772. As long as these requirements are met, a blood alcohol test may be performed even in the absence of a defendant's consent and over his objection without violating his Fourth Amendment rights. *See Schmerber v. California*, 384 U.S. at 759; *accord*, *e.g.*, *People v. Kates*, 53 N.Y.2d 591, 594 (N.Y. 1981).

To the extent that Haynes contends that his Fourth Amendment rights were violated in connection with the stop of his vehicle and the administration of a breathalyzer test to measure his blood-alcohol content, such claims not cognizable on federal habeas review under the doctrine articulated in *Stone v. Powell*, 428 U.S. 465 (1976). "[W]here the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. at 482. The Second Circuit has explained that in *Stone v. Powell*, all that the Supreme Court required was that the state have provided the state prisoner the *opportunity* to fully and

fairly litigate his Fourth Amendment claim. *Gates v. Henderson*, 568 F.2d 830, 839 (2d Cir. 1977) (*en banc*). "If the state provides no corrective procedures at all to redress Fourth Amendment violations, federal habeas corpus remains available. It may further be that even where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, the federal intrusion may still be warranted." *Id.* at 840. The focus of the inquiry as to whether there has been an "unconscionable breakdown" in the state's corrective process must be on "the existence and application of the corrective procedures themselves" rather than on the "outcome resulting from the application of adequate state court corrective procedures." *Capellan v. Riley*, 975 F.2d 67, 71 (2d Cir. 1992); *see also accord Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]")..

Haynes does not and cannot contend that New York failed to provide a corrective procedure to redress his alleged Fourth Amendment claim. This is because he took advantage of the opportunity to challenge the legality of his arrest by means of New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 7 10. 10 *et seq.*, which had been held to be "'facially adequate.'" *Capellan*, 975 F.2d at 70 n. 1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) and citing *Gates*, 568 F.2d at 837 & n. 4; *Shaw*

*v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)). The trial court denied Haynes' suppression motion, holding that the police officers had probable cause to stop his vehicle. The Appellate Division, on direct appeal, upheld the trial court's finding:

> [D]efendant contends that the police unlawfully stopped his motor vehicle and that County Court therefore erred in refusing to suppress the fruits of that unlawful stop. We reject that contention. The police officer who stopped the vehicle was aware that defendant had recently been ticketed for unlicensed operation of a motor vehicle, and that knowledge gave the officer the requisite level of suspicion to justify the stop of defendant's vehicle. While a computer check would have confirmed the status of defendant's license, we cannot conclude under the circumstances of this case that a computer check was necessary inasmuch as the ticket for unlicensed operation of a motor vehicle was issued close in time to the stop of defendant's vehicle.

*People v. Haynes*, 35 A.D.3d 1212, 825 N.Y.S.2d at 628. Haynes appears to be asserting that the state courts erroneously decided his motion to suppress, and he is requesting that this Court conduct a *de novo* factual review of his claims. The relief requested, however, is expressly forbidden by the *Stone v. Powell* doctrine, as the Second Circuit has explained many times: A petitioner's mere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an "unconscionable breakdown" occurred in the existing process in violation of the petitioner's Fourth Amendment rights under the Constitution. *Capellan*, 975 F.2d at 71 ("[T]o the extent that [petitioner] claims that the Appellate Division erred in its ruling . . . , this would not give us authority to review his claims since a mere disagreement with the outcome of a state court ruling is *not the equivalent* of an unconscionable breakdown in the state's corrective process.") (emphasis supplied); *Gates v. Henderson*, 568 F.2d at 840 ("*Stone v. Powell* . . . holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts.").

The Second Circuit has explicitly rejected the possibility of interpreting *Stone v. Powell* to require the reviewing court to focus on the correctness of the state court's corrective procedures for adjudicating Fourth Amendment claims, rather than on the existence and application of the corrective procedures themselves. According to the Second Circuit, to subject a habeas petitioner's previously litigated Fourth Amendment claims to further federal review would be to assume, "implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein." *Capellan*, 975 F.2d at 71. *Stone v. Powell*, however, "expressly discouraged" it from making such an assumption. *Id.* (citing *Powell*, 428 U.S. at 493-94 n. 35) ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States.").

Here, as noted above, Haynes took full advantage of the available state process by presenting his Fourth Amendment claim at both the suppression hearing and in his post-trial C.P.L. § 330.30 motion. A petitioner's mere disagreement with the outcome of the state courts' rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72; *accord, e.g.*, *Watkins v. Perez*, No. 05 Civ. 477(GEL), 2007 WL 1344163, *23 (S.D.N.Y. May 30, 2007) (holding that without more, rejection by state appellate court of petitioner's Fourth Amendment claims, is not an "unconscionable breakdown" in the state's corrective process; noting that a "habeas court cannot grant relief simply because it may disagree with the state court's resolution of the claim");; *Huntley v. Superintendent*, No. 9:00CV191, 2007 WL 319846, at *8 (N.D.N.Y. Jan. 30, 2007); *Gonzalez v. Superintendent, Sullivan Corr. Fac.*, 761 F. Supp. 973, 977 (E.D.N.Y. 1991) (rejecting habeas petitioner's claim

that state court denied his request for a probable cause hearing insufficient facts asserted to warrant such a hearing was "unconscionable breakdown" in the process afforded by the state; petitioner was provided, as mandated by *Stone*, with a full and fair opportunity to litigate his fourth amendment claim in the state courts and "[t]he fact that petitioner was denied his request for such a hearing does not, in and of itself, affect the legitimacy of the state process"). Under these circumstances, the doctrine of *Stone v. Powell* precludes *de novo* review of state court fact-finding on a Fourth Amendment issue. Accordingly, the Court recommends dismissing Haynes' Fourth Amendment claims relating to the stop of his vehicle and the administration of the breathalyzer test. *Accord, e.g.*, *Woods v. Kuhlmann*, 677 F. Supp. 1302, 1306 (S.D.N.Y. 1988).

To the extent that Haynes claims that the breathalyzer test or "preliminary breath test" was administered under "duress" in violation of his Fifth Amendment right against self-incrimination, this contention is without merit. The Self-Incrimination Clause of the Fifth Amendment provides that no "person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has consistently held that the privilege against self-incrimination "does not protect a suspect from being compelled by the State to produce 'real or physical evidence.'" *Pennsylvania v. Muniz*, 496 U.S. 582, 587 (1990) (quoting *Schmerber v. California*, 384 U.S. 757, 764 (1966)). Rather, the Fifth Amendment "'protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature.'" *Id.* (quoting *Schmerber*, 384 U.S. at 761). "'[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to

be a "witness" against himself.'" *Id.* (quoting *Doe v. United States*, 487 U.S. 201, 210 (1988) (alteration in original)).

In *Schmerber v. California*, 384 U.S. 757 (1966), the Supreme Court upheld a state-compelled blood-alcohol test against a defendant's claim that it infringed upon his Fifth Amendment right against self-incrimination, made applicable to the States through the Fourteenth Amendment. The Supreme Court "recognized that a coerced blood test infringed to some degree the 'inviolability of the human personality' and the 'requirement that the State procure the evidence against an accused 'by its own independent labors,'" but noted the Fifth Amendment's privilege against self-incrimination had "never been given the full scope suggested by the values it helps to protect." *Id.*; *accord South Dakota v. Neville*, 459 U.S. 553, 559 (1983). Because the Fifth Amendment's privilege bars the State only from compelling "communications" or "testimony," and because a blood test was "physical or real" evidence rather than testimonial evidence, the *Schmerber* court found it unprotected by the privilege. *Schmerber v. California*, 384 U.S. at 760-765; *see also id.* at 764 ("Thus, "compulsion which makes a suspect or accused the source of real or physical evidence' [generally] does not violate the Fifth Amendment."); *accord People v. Kates*, 53 N.Y.2d at 594-95. The conclusion that flowed from *Schmerber*'s holding was that the State "clearly [is] allow[ed] . . . to force a person suspected of driving while intoxicated to submit to a blood alcohol test." *South Dakota v. Neville,* 459 U.S. at 559.

In *Neville*, the Supreme Court considered the constitutionality of South Dakota's law requiring a person arrested for drunk driving to submit to a blood alcohol test or face having his refusal used against him. Relying on the teachings of *Schmerber*, the Supreme Court held in *Neville* that defendant's refusal to take a blood-alcohol test, after a police officer lawfully

requested it, was not an act coerced by the officer, and thus was not protected by the privilege against self-incrimination. *Id.* at 564; *accord*, *e.g.*, *United States v. Edmo*, 140 F.3d 1289, 1292 (9th Cir. 1998) (rejecting defendant's claim that being required to comply with a police officer's request for a urine sample violated his Fifth Amendment right against self-incrimination); *Jacquin v. Stenzil*, 886 F.2d 506, 508 (2d Cir. 1989). The Supreme Court noted in *Neville* that the "simple blood-alcohol test" was "so safe, painless, and commonplace," that the "state could legitimately compel the suspect, against his will, to accede to the test." *Id.* (citing *Schmerber*, 384 U.S. at 771). Furthermore, under New York State law, in exchange for the privilege of being licensed to drive, every motorist is deemed to have given advance consent to submit to such a "search" where certain conditions precedent are present. *E.g.*, *People v. Capraella*, 165 Misc.2d 639, 643 (N.Y. City Crim. Ct. 1995) (citing N.Y. Vehicle and Traffic Law § 1194(1); N.Y. Vehicle and Traffic Law § 1194(2)(a)(1)(2)).[4] Since the privilege to drive is a creature of New York statutory law, enacted concomitantly with a deemed consent provision, New York courts have held that, where the conditions precedent in Vehicle and Traffic Law § 1194(1) and (2) are present, an individual driver in New York has no constitutional right to refuse to submit to a police-requested blood-alcohol or other chemical test. *Id.* (citing *People v. Shaw*, 72 N.Y.2d 1032 (N.Y. 1988); *People v. Goodell*, 79 N.Y.2d 869 (N.Y. 1992); *People v. Thomas*, 46 N.Y.2d 100 (N.Y. 1978); *People v. Kates*, 53 N.Y.2d at 594).

---

[4]   Subdivision 1 of that statute establishes the general rule that "Any person who operates a motor vehicle in this state shall be deemed to have given his consent" to such a test. Subdivision 2 contains an exception which is only applicable when the driver refuses to consent. It states "If such person having been placed under arrest or after a breath test indicates the presence of alcohol in his system and having thereafter been requested to submit to such chemical test, refuses to submit to such chemical test, the test shall not be given[.]" The statute also provides penalties for the driver who refuses to submit after being advised of the consequences of refusal. *See* N.Y. Vehicle & Traffic Law § 1194(2), (4); *People v. Thomas*, 46 N.Y.2d 100, 108 (N.Y. 1978).

As the holdings in *Schmerber* and *Neville* make clear, the police could legitimately compel Haynes to submit to a breathalyzer test, without his consent, and not offend any of Haynes' federal or state constitutional rights. The Court finds that Haynes' claim that the breathalyzer test was administered under duress, in violation of his Fifth Amendment rights, is factually unsupported and without merit. To the extent that Haynes claims that a "preliminary breath test" was administered in violation of Vehicle and Traffic Law § 1194(1)(B),[5] he is asserting only that an error of state statutory law occurred. It is well-settled that federal habeas corpus relief does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citations omitted); *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution."); 28 U.S.C. § 2254(a). For all of the above-discussed reasons, the Court recommends dismissing Haynes' claims for habeas relief premised on the police officers' administration of the breathalyzer test and the "preliminary breath test" in connection with their stop of Haynes' vehicle.

## IV.   Conclusion

For the reasons set forth above, the Court recommends that the petition for a writ of habeas corpus filed by petitioner Timmie L. Haynes be **DENIED**. Furthermore, the Court finds that petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). Therefore, the Court recommends that no Certificate of

---

[5] Section 1194(1)(b), titled "Field testing," provides that "[e]very person operating a vehicle which has been involved in an accident or which is operated in violation of any of the provisions of this chapter [*i.e.*, the Vehicle and Traffic Law] shall, at the request of a police officer, submit to a breath test. . . ." N.Y. Vehicle and Traffic Law § 1194(b)(1). If the results of that test indicate that the driver has consumed alcohol, the police officer may request the driver to submit to a further chemical test as set forth in § 1194(2). *Id.*

Appealability should issue with respect to any of petitioner's claims.

                                           */s/ Victor E. Bianchini*

                                      _____
                                         VICTOR E. BIANCHINI
                                         United States Magistrate Judge

Dated:  August 1, 2007
         Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

                                              */s/ Victor E. Bianchini*

                                              VICTOR E. BIANCHINI
                                              United States Magistrate Judge

Dated:  Rochester, New York
         August 1, 2007.